Richard F. DeMOSS, Sr., Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.

Civ. A. No. 83–232 LON.

United States District Court, D. Delaware.

Dec. 13, 1988.

Michael J. Goodrick, of Theisen, Lank, Mulford & Goldberg, Wilmington, Del., for plaintiff.

Richard G. Andrews, of the Dept. of Justice, Wilmington, Del., for defendant.

## OPINION

LONGOBARDI, District Judge.

### STATEMENT OF FACTS

The Plaintiff, Richard F. DeMoss, Sr., is appealing the final decision of the Secretary of Health and Human Services ("Secretary") denying his claim for Disability Insurance Benefits.

In accordance with the procedures of the Social Security Administration, Plaintiff applied for Disability Insurance Benefits on October 21, 1981, and for Supplemental Security Income Benefits [1] alleging that he became disabled as of June 15, 1980, because of a "[r]ight leg amputation" and because his "left leg has bleeding ulcers." Transcript ("Tr.") at 86. At the initial level, the Secretary determined, based on Rule 201.14 of 20 C.F.R. § 404, Subpart P, Appendix 2, Table 1, that Plaintiff was disabled as of March 2, 1982, three months before his fiftieth birthday. Tr. at 9–10. The initial decision that Plaintiff was enti-

---

1. The record indicates that Plaintiff filed an application under Title XVI for Supplemental Security Income Benefits on October 29, 1981, and was granted benefits commencing on March 2, 1982, pursuant to Rule 201.14 of 20 C.F.R. § 404, Subpart P, Appendix 2, Table 1. Tr. at 10. Since neither the Plaintiff nor the Secretary challenged the determination of disability for purposes of receiving Supplemental Security Income Benefits in the administrative proceedings below, the A.L.J. limited his review to the determination of disability insurance benefits only. *Id.*

tled to Disability Insurance Benefits as of March 2, 1982, was subsequently revised at the reconsideration level. At that level, Plaintiff was denied Disability Insurance Benefits because he "was not under a disability prior to the expiration of his special disability insured status on December 31, 1981." Tr. at 10. On administrative appeal, the Administrative Law Judge ("A.L.J.") affirmed the Secretary's decision to terminate Plaintiff's benefits and concluded Plaintiff was not entitled to benefits because the special earnings requirements necessary to establish disability insured status under Title II expired on December 31, 1981. Tr. at 10, 97–99.

On April 22, 1983, the Plaintiff then appealed the Secretary's decision to the United States District Court for the District of Delaware, Docket Item ("D.I.") 1, where it was referred to a Magistrate on May 6, 1983. D.I. 3. By stipulation of the parties, the action was remanded to the Secretary to consider the effect of Plaintiff's then recently filed amended tax returns for 1979, 1980 and 1981 which reflected additional self-employment income.[2] D.I. 14. On remand, the A.L.J. gave the Plaintiff six additional quarters of coverage for 1979 and 1980 which extended his insured status to March 31, 1982. Tr. at 204–05. The A.L.J., however, also determined that the income listed for 1981 should be excluded from determining net earnings under 42 U.S.C. § 411(a)(3) and 20 C.F.R. § 404.1084 because it arose from the sale of capital assets that were not property held primarily for sale in the ordinary course of the trade or business. Tr. at 204–06. The A.L.J. thus concluded that this income could not be considered in determining the Plaintiff's insured status and refused to extend Plaintiff's insured status to June 1, 1982. *Id.* Plaintiff appealed this decision to the District Court which referred the

matter to a Magistrate for a second time. D.I. 19. Plaintiff contends that the A.L.J. failed to properly develop the record because "it was the duty of the [A.L.J.] faced with what he felt to be an incomplete record to inquire fully into the matter." D.I. 22 at 2. In other words, the Plaintiff believes that if the A.L.J. had reached a preliminary conclusion based upon the "paper record" indicating that the 1981 tax return provided insufficient evidence to credit the Plaintiff with additional quarters of coverage for 1981, then he had a duty to request further information from the Plaintiff. D.I. 27 at 3. After a preliminary determination that the A.L.J. had not breached a duty to properly develop the record, the Magistrate recommended that the matter be remanded to the Secretary in order to consider new evidence in the record and to determine whether the Plaintiff was disabled for Social Security purposes aside from the issue of his insured status. D.I. 27 at 5. Both the Plaintiff and the Secretary filed objections to the Magistrate's Report and Recommendation. For the reasons set forth below, this Court rejects the portion of the Magistrate's Report and Recommendation that the case be remanded and affirms the Secretary's decision to deny Plaintiff's Social Security application.

## SUBSTANTIAL EVIDENCE

Judicial review of an appeal from an administrative determination of the Social Security Administration is confined to the administrative record and is limited to determining whether the decision is supported by "substantial evidence" of the record as a whole. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Gober v. Matthews,* 574 F.2d 772, 777 (3rd Cir.1978); 42 U.S.C. § 405(g). This standard precludes a court from exer-

---

**2.** After the A.L.J.'s initial decision to deny the Plaintiff's application for benefits, his attorney reviewed the claimant's tax filings in compliance with the appropriate regulations of the Department of Treasury. It was determined that the claimant had undeclared income for the years 1980 and 1981 which totaled $1,850 and he filed the appropriate amended tax returns and paid all penalties and interest. If the addi-

tional income listed on the amended tax return for 1981 constituted self-employment income within the meaning of the Social Security Act, then Plaintiff would be credited with four more quarters of insurance coverage which would extend his insured status to June 1, 1982, thereby entitling Plaintiff to disability benefits because he would have sufficient insurance coverage as of his fiftieth birthday. D.I. 23 at 3.

cising a *de novo* review of the administrative decision and substituting its own finding for that of the Secretary. *Ginter v. Secretary of the Dept. of H.E.W.*, 621 F.2d 313 (9th Cir.1980); *Hicks v. Gardner*, 393 F.2d 299 (4th Cir.1968). However, if the Secretary's decision to deny benefits is supported by substantial evidence in the record, the decision must be affirmed by the District Court. *Smakula v. Weinberger*, 572 F.2d 127, 131 (3rd Cir.1978); *Hess v. Secretary of Health, Education and Welfare*, 497 F.2d 837, 838 (3rd Cir. 1974). Substantial evidence is defined to be more than a "scintilla" and less than a preponderance of the evidence and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cotter v. Harris*, 642 F.2d 700, 704 (3rd Cir.1981). After the remand, Plaintiff filed an amended tax return for 1981 which listed total income as $1,850. It is uncontested that if the 1981 income constituted income under the Social Security Act, then the Plaintiff would be credited with four additional quarters of insurance coverage and would be eligible for Disability Insurance Benefits as of his fiftieth birthday. D.I. 17 at 4; D.I. 21 at 6; D.I. 23 at 3; *see also supra* n. 2 at 305. The A.L.J., however, excluded the Plaintiff's 1981 income in determining his insured status because 42 U.S.C. § 411(a)(3) excludes income derived from the sale of capital assets or from the sale of property which is not inventory from "self-employment net earnings":

> (a) The term "net earnings from self-employment" means the gross income, as computed under subtitle A of Title 26, derived by an individual from any trade or business carried on by such an individual, less the deductions allowed under such subtitle which are attributable to such trade or business, plus his distributive share (whether or not distributed) of the ordinary net income or loss, as computed under Section 702(a)(8) of Title 26, from any trade or business carried by a partnership of which he is a member; except that in computing such gross income and deductions and such distributive share of partnership ordinary net income or loss—
>
> \* \* \* \* \* \*
>
> (3) There shall be excluded any gain or loss (A) which is considered under Subtitle A of Title 26 as gain or loss from the sale or exchange of a capital asset, ... (C) from the sale, exchange, involuntary conversion, or other disposition of property if such property is neither (i) stock in trade or other property of a kind which would properly be includible in inventory if on hand at the close of the taxable year, nor (ii) property held primarily for sale to customers in the ordinary course of the trade or business....

42 U.S.C. § 411(a)(3). Pursuant to this section of the Social Security Act, the Secretary promulgated regulations which exempted certain income from self-employment earnings:

> (a) if you are engaged in a trade or business, you must, in determining your net earnings from self-employment, exclude any gain or loss—(1) that is considered a gain or loss from the sale or exchange of a capital asset; ... (4) from the sale, exchange, involuntary conversion, or other disposition of property that is not—(i) stock in trade or other property of a kind which would properly be included in inventory if on hand at the close of the taxable year; or (ii) property held primarily for sale to customers in the ordinary course of a trade or business....

20 C.F.R. § 404.1084.

■ The A.L.J. has an obligation to search the entire record for evidence in determining the Plaintiff's insured status. In other words, the A.L.J. may not simply sequester a portion of the record which may support the Secretary's conclusion and isolate it from the remainder of the record. *See Talifero v. Califano*, 426 F.Supp. 1380, 1387 (W.D.Mo.1977). The A.L.J.'s decision to exclude Plaintiff's 1981 income was based on an analysis of Plaintiff's tax returns for 1979, 1980 and 1981. Tr. at 202–06. The Plaintiff's 1979 tax returns indicate that he was involved in two businesses. The first business was a security systems sales and installation concern. Tr. at

277–79. The second business was an insurance sales concern. Tr. at 175. A review of Plaintiff's Schedule C for Plaintiff's security systems business in 1979 reveals that Plaintiff had an inventory (presumably consisting of burglar alarms) valued at $100. Tr. at 279.[3] In 1980, the Plaintiff's Schedule C shows no entry for the cost of purchasing inventory for the security systems business. Tr. at 274–75. The Plaintiff's statement of depreciation, however, listed two desks, four file cabinets, two chairs and an adding machine. Tr. at 288–90. His 1980 tax return listed income only from the insurance business and, furthermore, the Plaintiff testified that he discontinued working in June, 1980. Tr. at 225.

■ The Plaintiff had income consisting of $1,850 in 1981. The Plaintiff did not provide Schedule C for 1981 which would have indicated the type of business from which the income arose and the source of the $1,850. The A.L.J. had to rely, therefore, on the 1980 tax return to determine that the type of business involved was the insurance business. A letter from Plaintiff's attorney reported that the income was from the "sale of inventory and assets." Tr. at 285. However, since the Plaintiff's insurance business did not contain any inventory, the $1,850 must have arisen from the sale of assets in connection with the security business.[4] Therefore, the A.L.J. found it reasonable to conclude from the available facts in the record that the $1,850 arose from the sale of the capital assets of the security systems business which must be excluded from self-employment income under 42 U.S.C. § 411(a)(3). Tr. at 205. The conclusion is reasonable from the evidence actually in the record that the Plaintiff failed to meet his burden to show that the additional income constituted "self-employment income" within the definition of the Social Security Act and regulations promulgated thereunder.

By considering tax records in conjunction with Plaintiff's 1981 amended return, the A.L.J.'s decision to exclude the $1,850 as self-employment income was reached by considering the record as a whole, was not limited to a partial reading of the available evidence and, therefore, must be considered to be supported by substantial evidence. *See, e.g., Vitek v. Finch,* 438 F.2d 1157 (4th Cir.1971).

## REMAND

■ In his Report and Recommendation, the Magistrate recommended that the case be remanded to the Secretary to consider the Plaintiff's insured status in light of new evidence in the form of an affidavit recently submitted by the Plaintiff's son, Robert DeMoss. D.I. 24. The Social Security Act states in part: "[The Court] may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding...." 42 U.S.C. § 405(g). The Court of Appeals for the Third Circuit has specified the prerequisites which the Plaintiff must meet in order for the District Court to order a remand. *Szubak v. Secretary of Health & Human Services,* 745 F.2d 831, 833 (3rd Cir.1984). First, the evidence must be "new" and not merely "cumulative of what is already in the record." *See, e.g., Bomes v. Schweiker,* 544 F.Supp. 72, 75–76 (D.Mass.1982). Second, the evidence must be material;

---

**3.** The A.L.J. questioned whether it was reasonable that any inventory would be saleable from the insurance business. Tr. at 205. An insurance business constitutes the sale of a service (*e.g.,* insurance contracts) and does not ordinarily involve the sale of inventory items. *See* D.I. 21 at 7. For example, the Magistrate stated that "the item 'sold' is the insurance policy itself, so one would expect a zero cost for inventory purchased." D.I. 23 at 4.

**4.** The record indicates that the security systems business still contained inventory valued at $100. Tr. at 277–79. The Plaintiff can not be credited with that amount for determining self-employment income because the "assets and inventory" were sold to the Plaintiff's son for approximately $2,000. D.I. 24 at 2. After subtracting the cost basis of the inventory, the Plaintiff is left with approximately $1,900 of additional income. The Plaintiff does not account for the $50 discrepancy between the sale price (minus the adjusted basis) and the $1,850 that was actually reported as additional income.

that is it must be "relevant and probative." *See, e.g., Chaney v. Schweiker,* 659 F.2d 676, 679 (5th Cir.1981). Finally, the Plaintiff must demonstrate good cause for not having incorporated the new evidence into the administrative record. *See, e.g., Brown v. Schweiker,* 557 F.Supp. 190, 192 (M.D.Fla.1983).

### 1. *New Evidence*

Additional evidence that a claimant seeks to introduce to justify a remand must be new. Evidence is new if it was not and could not have been presented at the prior administrative proceeding. *Carroll v. Califano,* 619 F.2d 1157, 1162 n. 6 (6th Cir. 1980). The Magistrate concluded that the affidavit of Robert DeMoss constituted new evidence which would justify remanding the case to the A.L.J. for the taking of additional evidence. D.I. 27 at 5.

Although the affidavit may be termed "new" evidence because it was not presented to the A.L.J. on remand, such a characterization would be legally incorrect because the affidavit was not "newly discovered." *See Birchfield v. Harris,* 506 F.Supp. 251, 253 (E.D.Tenn.1980). It could have been taken and presented to the A.L.J. on remand when the status of the Plaintiff's amended tax returns of 1979, 1980 and 1981 were considered. Instead, the Plaintiff decided to rely upon the "paper record" consisting of the amended tax returns as sufficient evidence to establish additional income for purposes of extended quarters of insurance coverage. Thus, the affidavit of Robert DeMoss fails to satisfy the requirement of being new because it could have been presented to the A.L.J. in the administrative hearing on the previous remand.

### 2. *Materiality*

Even if the affidavit could be characterized as new evidence, the new evidence must be material in order to justify a remand. The Third Circuit has stated that the standard for materiality requires that "there be a reasonable probability that the new evidence would have changed the outcome of the Secretary's determination."

*Szubak,* 745 F.2d at 833; *see also Bomes,* 544 F.Supp. at 76. In his Report and Recommendation, the Magistrate stated his belief that the evidence was material because "if upon remand the A.L.J. accepts the plaintiff's evidence as credible, the plaintiff will have an insured status as of his fiftieth birthday." D.I. 27 at 5. The Secretary, however, disputes this conclusion because the affidavit fails to shed any new light on the point in controversy.

The issue is whether the $1,850 reported in the Plaintiff's 1981 tax return constitutes self-employment income or was derived from the sale of capital assets. The Plaintiff offers his son's affidavit to establish that the income was derived from the sale of used parts. The Plaintiff further asserts that the records of this transaction are lost. *Id.* Nevertheless, Plaintiff could have provided Schedule C and C–1 of his amended tax return for 1981 to show the source of the income. Tr. at 290. The Plaintiff provided Schedule C for his tax returns of 1979 and 1980 but mysteriously failed to provide it for his 1981 income. Tr. at 261, 274, 277, 279.

This Court has an obligation to give careful scrutiny to the record as a whole to determine whether the Secretary's decision is supported by substantial evidence. *Vitek v. Finch,* 438 F.2d 1157. Unless the proffered evidence indicates a probability that the Secretary's initial decision was in error, then the evidence is not material. In his sworn statement, Robert DeMoss stated that his company, Security Protective Service, Inc., purchased "certain burglar alarm equipment and materials" from his father, "the majority of which were used but serviceable". D.I. 24 at 1–2. Nevertheless, the affidavit lacks specificity and does not demonstrate "good cause" that there is a reasonable probability that the A.L.J.'s determination would be altered upon its consideration. Instead, the affidavit merely attempts to explain the type of assets sold so that the A.L.J. would render a decision in the Plaintiff's favor and provides nothing substantive to support the contention that the $1,850 constituted a sale of inventory rather than a sale of

capital assets.[5] As a matter of fact, it supports the conclusion that they were capital assets because the affidavit suggests he used the equipment for service work before the Plaintiff stopped working in 1980.

Since the Plaintiff has testified that his security systems business was "defunct" in 1980, the source of the inventory referred to in the affidavit is also questionable. Although the Plaintiff provided Schedule C and C–1 of his amended tax returns for 1979 and 1980, the Plaintiff did not report this additional inventory to the Internal Revenue Service on these tax forms. In addition, the Plaintiff has failed to submit Schedule C and C–1 of his amended tax return for 1981 to corroborate the affidavit testimony. Tr. at 290, at line 2; *see also* Tr. at 261, 274, 277 and 279. Thus, the Court questions the probativeness of the proffered affidavit and the letter. Consequently, the Plaintiff has failed to show that the proffered evidence is material to the question of determining his insured quarters status.

### 3. *Good Cause*

Even if the affidavit was material evidence, a District Court may remand a case to the Secretary only if the claimant demonstrates that there is good cause for the absence of that evidence in the record. 42 U.S.C. § 405(g). Although the Social Security Act is to be "broadly and liberally construed", *see, e.g., Rasmussen v. Gardner*, 374 F.2d 589 (10th Cir.1967), Congress was concerned "about a flood of unjustified federal court-ordered remands" and replaced the good cause standard for remand with a stricter standard that requires not only good cause but also the probability

that new and material evidence will be presented. *Curtis v. Heckler*, 579 F.Supp. 1026, 1028 (E.D.Tex.1984). It was noted that "the number of these court remands seem[ed] to be increasing ...," and the Congress clearly acted to limit the power of the District Courts to remand actions for the taking of new evidence. *Birchfield*, 506 F.Supp. at 252 (citing S.Rep. No. 96–408, 96th Cong. 2d Sess. *reprinted in* 1980 U.S.Code Cong. & Admin.News 1277, 1336 (1980)). Thus, one purpose of the good cause requirement is to prevent the claimant from obtaining another "bite at the apple" in the event of an adverse decision by the Secretary. *Birchfield*, 506 F.Supp. at 252.

Whether an action should be remanded to the Secretary for the taking of additional evidence is a decision within the discretion of the Court. *Davis v. Califano*, 437 F.Supp. 978, 980 (D.Ill.1977); *see also Birchfield*, 506 F.Supp. at 252–53. In order to demonstrate good cause, the claimant must provide a logical reason why the proffered additional evidence was not, or could not have been, presented to the Secretary for inclusion in the record during the administrative proceedings. *Reynolds v. Heckler*, 570 F.Supp. 1064, 1067 (D.Ariz. 1983). "In other words, for a plaintiff to show good cause for the failure to incorporate the additional evidence into the administrative record, he should demonstrate some justification for his failure to have acquired and presented such evidence to the Secretary." *Birchfield*, 506 F.Supp at 253.

The case at bar is similar to the decision in *Torres v. Schweiker*, 682 F.2d 109 (3rd Cir.1982). In that case, the Third Circuit

---

**5.** The only evidence that even suggests that the $1,850 resulted from a sale of inventory is contained in a letter to the Magistrate dated December 22, 1987. The Plaintiff's attorney stated in the letter that:

> Mr. Demoss has advised me that many of the jobs in which he performed in the burglar and fire alarm business involved the removal of burglar and fire alarm equipment and its replacement. In removing much of this equipment, he found it serviceable and could be used in other jobs.... [The affidavit] explains that the monies which Richard DeMoss

declared in 1981 were funds received from his son, Robert DeMoss, for the purchase of the used and new equipment which Richard DeMoss continued to hold in stock but had no further use for as he was no longer capable of service work.

Nevertheless, this letter is not the proffered evidence used by the Plaintiff to justify a remand in this case. The letter is different from the affidavit in question because the affidavit is part of the record for the Court to determine if good cause exists to order a remand for the A.L.J. to consider the source of the $1,850.

Court of Appeals affirmed the District Court's decision to deny the claimant's request to introduce new medical evidence. In determining whether good cause existed for remand, the Third Circuit noted one of the reasons that the District Court denied the claimant's request was that she "d[id] not state any reason whatsoever for failing to produce the additional evidence at prior proceedings" as required under 42 U.S.C. § 405(g). *Id.* at 113. Upon appeal, the claimant's attorney submitted an affidavit which suggested that good cause existed for a remand because neither the claimant nor her attorney could afford to obtain additional psychiatric examinations. *Id.* The Third Circuit concluded that since the affidavit had not been presented to the District Court, it could not rely upon whatever the persuasive value the affidavit would have had to overturn the District Court's decision. *Id.*

This Court believes that the Plaintiff has failed to make an adequate showing of good cause for the failure to submit the evidence to justify a remand in this case. The Plaintiff has not offered any explanation whatsoever for his failure to submit the affidavit at the supplemental evidentiary hearing. Instead, the Plaintiff decided not to attend the evidentiary hearing at all because he believed that the A.L.J. had sufficient evidence in the "paper record" upon which to render a decision in his favor. Tr. at 288. The Plaintiff's argument seems to suggest, however, that the A.L.J. was somehow prevented from rendering a decision based on the circumstantial evidence in the record. Furthermore, the Plaintiff submitted the affidavit as new evidence only after the Magistrate required the Plaintiff "to make a proffer that the A.L.J.'s alleged breach of his obligation to fully develop the record was material." D.I. 27 at 3. In *Dombrowolsky v. Califano*, 606 F.2d 403, 407 (3rd Cir.1979), the Third Circuit held that the A.L.J. had a "heightened level of care ... to assume a more active role [to properly develop the record only] when the claimant is unrepresented ... and prejudiced by lack of counsel." In the present case, the Plaintiff was represented by counsel. The Plaintiff's de-

cision not to present additional evidence at the supplemental hearing to show the source of the additional $1,850 and to waive attendance at the hearing all together was a tactical decision by counsel. Thus, the A.L.J. did not have a duty to give "heightened level of care" to beg counsel for additional evidence so that a decision may be rendered in the Plaintiff's favor.

Even if the A.L.J. had a duty to give a "heightened level of care", the Magistrate concluded in his Report and Recommendation that "the A.L.J. had not breached his duty to fully develop the factual record." D.I. 27 at 4. Furthermore, the Plaintiff avoided the efforts of the A.L.J. on remand to obtain evidence that indicated the source of the additional $1,850. For example, the new additional evidence presented in the affidavit of Robert DeMoss was not newly discovered. Instead, the evidence proffered by the Plaintiff was available to him at the time of the administrative hearing on the prior remand. In fact, the Plaintiff waived an evidentiary hearing at the remand to determine the scope of the Plaintiff's 1981 amended tax return. Tr. at 285–87. Consequently, the Plaintiff should not be given "another bite at the apple" simply because he is unhappy with the decision rendered by the A.L.J.

The Magistrate, however, found that good cause for a remand existed. The Magistrate stated, "It is difficult to fault plaintiff's counsel for failing to anticipate the line of reasoning that the A.L.J. would apply to the returns placed in the record." D.I. 27 at 5. The Magistrate cited to an opinion from the Court of Appeals for the Eighth Circuit in which the court admonished the A.L.J. for not informing the plaintiff's counsel of the weight he intended to give interrogatories entered into the record in a supplemental hearing. *See Woodard v. Schweiker*, 668 F.2d 370, 374 n. 2 (8th Cir.1981). The Magistrate's reliance upon this opinion is misplaced because the case does not stand for the proposition that good cause is satisfied where the plaintiff's counsel could not anticipate the line of rea-

soning the A.L.J. would take in rendering his decision. If this were true, every time that a party received an adverse decision by the Secretary, it would be claimed that the decision making process of the A.L.J. was misunderstood and, therefore, the party should be given another chance to counter the A.L.J.'s decision. This would essentially give parties two "bites at the apple"; a position which clearly runs counter to the purpose of section 405(g).

In addition, the Magistrate suggested in his Report and Recommendation that the case should be remanded to consider if the Plaintiff is disabled for Social Security purposes aside from the issue of his insured status. D.I. 27 at 5. The Magistrate believed that the two A.L.J.'s involved in the case had not made a determination that the Plaintiff was disabled and that the issue would have to be revisited if the Plaintiff were to prevail on the insured status. D.I. 23 at 2 n. 1. Nevertheless, since the parties entered into a stipulated agreement that the sole issue to be considered on remand is whether the Plaintiff had sufficient quarters of insurance coverage (D.I. 14), this Court may not properly consider the question of the Plaintiff's disability on an appeal from the remand. The Secretary may decide, however, to revisit the determination of the Plaintiff's disability in a separate proceeding pursuant to 20 C.F.R. § 416.1488. Consequently, this Court also rejects the Magistrate's Report and Recommendation with respect to the issue of remanding the case for a determination of the Plaintiff's disability.