

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-26-2007

# Salles v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2799

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Salles v. Comm Social Security" (2007). *2007 Decisions.* Paper 884.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/884

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-2799
_____

PATRICIA J. SALLES

*Appellant*

v.

COMMISSIONER OF SOCIAL SECURITY


_____


On Appeal from United States Court
for the District of New Jersey
(D. C. Civil No. 05-cv-00394)
District Judge: Honorable William G. Bassler
_____


Submitted Under Third Circuit LAR 34.1(a)
May 7, 2007

Before: RENDELL, JORDAN and HARDIMAN, *Circuit Judges.*

(Filed: June 26, 2007)
_____

OPINION OF THE COURT
_____


HARDIMAN, *Circuit Judge*.

This case is a timely appeal from the District Court's decision affirming the Commissioner's decision to deny Supplemental Security Income (SSI) benefits to Appellant Patricia Salles (Salles). We will affirm.

I.

Appellant Salles claimed to be disabled since March 10, 1972 because of blindness in her left eye and poor vision in her right eye. After the Agency denied her application, Salles appealed and a hearing was held before Administrative Law Judge (ALJ) Gerald R. Ryan, who found her not disabled. Salles appealed to the United States District Court for the Eastern District of Pennsylvania, which affirmed the Commissioner's decision.

II.

This Court "review[s] the ALJ's decision under the same standard of review as the District Court, to determine whether there is substantial evidence on the record to support the ALJ's decision." *Burnett v. Comm'r of Soc. Sec. Admin.,* 220 F.3d 112, 118 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). "[W]e are bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988). Our review of legal issues is plenary. *See Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999).

III.

Because we write for the parties, we note only the essential facts. Salles has been blind in her left eye since 1974, when a bottle of ammonia exploded in her face and scorched her cornea. In addition to her left eye blindness, Salles testified that she suffers from degenerative disc disease of the lower lumbar spine, Hepatitis C, HIV, depression, gall bladder disease, and visual acuity limitations in her right eye.[1] Salles worked as a telemarketing manager from early 2000 until March 2001, when she resigned because of blurred vision, headaches, and a loss of balance.

Salles testified that she took medication for depression, back pain, and stomach ulcers, but not for her HIV or Hepatitis C. Although Salles testified that she suffers from chronic fatigue, she admitted that she takes care of all her personal needs, cleans her house, takes public transportation, goes to the store, and can walk around the block.

Applying the familiar five-step sequential evaluation, the ALJ found at Step One that Salles had not performed substantial gainful activity during the pertinent period. At Steps Two and Three, the ALJ found that Salles's blindness in her left eye and her degenerative disc disease were "serious" impairments, but not severe enough to meet or equal a listed impairment. After explaining why he considered Salles's testimony about

---

[1]    After the hearing, but more than two weeks before the ALJ issued his decision, Salles's former counsel obtained additional records which indicated that Salles had been treated for depression. The ALJ granted Salles until May 23, 2003 to submit these records, but her former counsel inexplicably failed to do so for more than a year.

her limitations and subjective symptoms to be less than fully credible, the ALJ found her residual functional capacity (RFC) to be as follows:

> [Salles] retains the [RFC] to perform at least light work [...] that does not require binocular vision. She is therefore able to lift/carry objects weighing up to 20 pounds occasionally, and 10 pounds frequently, and during the course of an 8-hour workday, she has been capable of standing, walking and/or sitting for a total of 6 hours. Because of her limited vision, she should not work in proximity to hazardous machinery or at unprotected heights.

On the basis of this RFC, the ALJ found that Salles was not disabled at Step Four because she could perform her prior work as a telemarketing manager. The Appeals Council found no grounds for review.

## IV.

The gravamen of Salles's appeal is that the evidence is insufficient to support the ALJ's decision. Salles claims that the ALJ erred by: (1) omitting probative evidence; (2) failing to accord increased evidentiary weight to the clinical opinions of Salles's treating physicians; (3) preferring the opinion of a consultative examiner; (4) finding Salles's HIV infection, Hepatitis C, right-eye blurriness, and major depressive disorder to be non-severe; (5) failing to engage in a task-by-task explanation — or articulate an evidentiary basis — for his RFC assessment; and (6) failing to account for Salles's subjective symptom testimony.

### A. *Substantial Evidence Supports The ALJ's Step-Two Analysis*

4

Salles argues principally that the ALJ erred in holding that several of her impairments — specifically, her Hepatitis C, HIV infection, right-eye blurriness, and major depression — were not "severe" at Step Two. We disagree.

At Step Two of the five-step sequential inquiry, the ALJ must determine whether the claimant has a medically severe impairment or combination of impairments. *See Bowen v. Yuckert,* 482 U.S. 137, 140-41 (1987); *see also* Social Security Ruling (SSR) 86-8, 1986 SSR LEXIS 15, at *6-7; SSR 85-28, 1985 SSR LEXIS 19, at *1. Under the applicable regulations, an impairment is severe only if it significantly limits the claimant's physical or mental ability to do "basic work activities," *i.e.,* physical "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling," or mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). A "severe" impairment is distinguished from "a slight abnormality," which has such a minimal effect that it would not be expected to interfere with the claimant's ability to work, regardless of her age, education, or work experience. *See Bowen,* 482 U.S. at 149-51. The claimant has the burden of showing that an impairment is severe. *Id.* at 146 n.5.

In the case at bar, the ALJ found in Salles's favor at Step Two, when he concluded that her degenerative disc disease and monocular vision were severe. As to Salles's HIV, depression, and visual problems with her right eye, the ALJ properly found these

5

impairments to be non-severe. Although Salles had testified to experiencing symptoms

consistent with these ailments, she does not dispute the Commissioner's observation that

there was no medical evidence in the record before the ALJ that Salles had been

diagnosed with or treated for these conditions. On this point, the pertinent SSR is clear:

> In the absence of a showing that there is a "medically determinable
> physical or mental impairment," an individual must be found not
> disabled at step 2 of the sequential evaluation process. *No symptom
> or combination of symptoms can be the basis for a finding of
> disability, no matter how genuine the individual's complaints may
> appear to be, unless there are medical signs and laboratory findings
> demonstrating the existence of a medically determinable physical or
> mental impairment.*

SSR 96-4p, 1996 WL 374187, at *1 (emphasis added).[2]

Finally, although the record now contains evidence that Salles was diagnosed with

HIV, Hepatitis C, and depression,[3] these diagnoses alone are insufficient to establish their

severity at Step Two. In addition to the diagnoses, Salles was required to present

evidence that these limitations *significantly* limited her ability to do basic work activities

or impaired her capacity to cope with the mental demands of working. *See* 20 C.F.R. §§

---

[2] Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless. *See Rutherford v. Barnhart,* 399 F.3d 546, 553 (3d Cir. 2005).

[3] When a claimant relies on evidence that was not before the ALJ, a district court may remand to the Commissioner only if the evidence is "new," "material," and good cause exists for not previously presenting the evidence to the ALJ. *See Szubak v. Sec. of Health and Human Servs.,* 745 F.2d 831, 833 (3d Cir. 1984); *see also* 42 U.S.C. § 405(g). We agree with the District Court that neither materiality nor good cause existed here.

6

404.1520©, 404 1521(a); *see also Ramirez v. Barnhart,* 372 F.3d 546, 551 (3d Cir. 2004).

Beyond Salles's own testimony (about which the ALJ made properly-supported adverse credibility findings), there is no evidence that these four conditions resulted in functional limitations. The fact that Salles's gall bladder disease, Hepatitis, and headaches from eye strain evidently were either not treated at all or were controlled by medication supports the ALJ's findings that these impairments were not severe.

B.   *Substantial Evidence Supports The ALJ's Step-Three Determination That Salles's Combination Of Impairments Did Not Meet Or Equal A Listing*

Salles contends that the ALJ erred at Step Three when he found that her condition did not meet or equal a Listing-level impairment, an argument which is entirely dependent upon the merits of her argument that the ALJ erred at Step Two. Even if the two arguments were independent, however, the evidence supports the District Court's conclusion that the ALJ's Step Three analysis was sound.

At Step Three, the ALJ identified specific Listings pertaining to spinal and visual acuity disorders, and explained why Salles's condition failed to meet them. Salles criticizes the ALJ for failing to "mention [her] HIV infection at all!" and for ignoring her depression. *See* Salles Br. at 21-22. Aside from the fact that the record before the ALJ contained no medical or treatment records to support Salles's testimony regarding depression and HIV, there is no evidence that either of these impairments meets or equals a Listing. *See* 20 C.F.R. § 404.1525(d) (explaining that "impairment(s) cannot meet the criteria of a [L]isting based only on a diagnosis. To meet the requirements of a [L]isting,

7

you must have a medically determinable impairment(s) that satisfies all of the criteria in the [L]isting."). Salles's failure to cite any evidence in the medical record to substantiate her claim that her HIV is symptomatic dooms her claim.[4] Likewise, Salles's belatedly-offered medical evidence of her depression shows that it was not disabling because that impairment was controlled by medication. *See* 20 C.F.R. § 404.1530, *see also Brown v. Bowen,* 845 F.2d 1211, 1215 (3d Cir. 1988).

C. *The ALJ's Adverse Credibility Determination Was Not Improper*

Salles contends that the ALJ's adverse credibility determination was erroneous. When making credibility findings, the ALJ must indicate which evidence he rejects and which he relies upon as the basis for his findings. *See Schaudeck v. Commissioner of Social Sec. Admin.,* 181 F.3d 429, 433 (3d Cir. 1999). Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about her limitations or symptoms is less than fully credible. *See Burns v. Barnhart,* 312 F.3d 113, 129-30 (3d Cir. 2002). Moreover, allegations of pain and other subjective symptoms must be supported by

---

[4] The regulations provide that "any individual with HIV infection, including one with a diagnosis of acquired immunodeficiency syndrome (AIDS), may be found disabled under this [L]isting if his or her impairment meets any of the criteria in 14.08 or is of equivalent severity to any impairment in 14.08." 20 C.F.R., Pt. 404, Subpt. P, App. 1, 14.00(D)(1). Therefore, Social Security benefits are not available for a claimant whose positive HIV status is unaccompanied by one of various related disorders listed under 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 14.08(A)–(N). The only "related disorder" that Salles has identified is chronic diarrhea. However, the ALJ properly found that Salles's claim of chronic diarrhea was unsupported by the medical record, especially considering that Salles was prescribed a diuretic in 2002.

objective medical evidence.  *See* 20 C.F.R. § 404.1529; *see also Hartranft v. Apfel*, 181 F.3d

358, 362 (3d Cir. 1999).  Even "[l]imitations that are medically supported but are also

contradicted by other evidence in the record may or may not be found credible – the ALJ can

choose to credit portions of the existing evidence."  *See Rutherford,* 399 F.3d at 554.

Contrary to Salles's contention, the ALJ did not settle for a "quotation of the correct law"

but "fail[] to follow the actual guidelines contained in that law."  Salles Br. at 32.  Rather, the

ALJ explained how his credibility assessment influenced his RFC:

> [T]he undersigned has considered [Salles's] subjective allegations
> regarding her impairments and their functional effects[;] however
> these are not found to be fully credible.  For instance, [Salles]
> testified as to suffering from constant and severe diarrhea.  However,
> there is no documentation of such a manifestation from Dr. Miller,
> the University Hospital records, or Dr. Roque's examination. [Salles]
> testified to having been prescribed a cane by her doctor, yet similarly
> indicated that she does not have any limitations in walking.
> Moreover, Dr. Miller's progress note dated September 6, 2001, [...]
> as well as Dr. Goldberg's examination report dated September 7,
> 2001 [...] chronicle that [Salles] was then working as a nurse's aid, a
> circumstance not reported by [her].  Additionally, [Salles's] work
> history is noted to be nominal [...], a situation that does not serve to
> bolster her contentions of an inability to continue in work endeavors.
> It is therefore found that the degree of functional compromise
> purported by [Salles] is not substantiated by objective evidence.

These findings are specific enough to permit the Court to ascertain which evidence the

ALJ accepted, which evidence he rejected, and why.  *See Cotter v. Harris,* 642 F.2d 700,

705 (3d Cir. 1981).

Nor is there any doubt that the reasons the ALJ offered for his credibility

determination were legitimate.  The ALJ discounted Salles's testimony regarding her

subjective symptoms because of her poor work history, which reflected that she was

9

unemployed from 1987 to 2000. Salles does not dispute this interpretation of her employment record, and the ALJ properly considered it. *See Dobrowolsky v. Califano,* 606 F.2d 403, 409 (3d Cir. 1979). More specifically, the ALJ found that Salles's claimed limitations — including her alleged ambulatory limitations — were contradicted by her own testimony and level of activity, which is another legitimate basis for discounting her credibility. *See Rutherford,* 399 F.3d at 555 (3d Cir. 2005). Finally, the ALJ need not have accepted any of Salles's claimed limitations from depression or HIV, because the record before him contained no medical evidence that her symptoms impaired her ability to work. Allegations of pain and other subjective symptoms must be supported by objective medical evidence. *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c).

D. *The ALJ's RFC Assessment Was Not Erroneous*

Salles insists that the ALJ's assessment of her RFC was "unexplained" because it does not recognize specific limitations resulting from her HIV, Hepatitis, blurred right-eye vision, and depression, and because it does not recognize all of the limitations caused by her degenerative disc disease. We are unpersuaded.

At Step Four, the Commissioner determines whether, despite her severe impairments, the claimant retains the RFC to perform her past relevant work. *See* 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). The RFC reflects "what [the claimant] can still do despite [her] limitations." *See* 20 C.F.R. § 416.945(a). In making this determination, "the ALJ must consider all evidence before him." *Burnett,* 220 F.3d at 121 (citations omitted). Thus, "[a]lthough the impairment must be medically

determinable, it need not be a "severe" impairment to be considered in the RFC assessment." *See Rutherford,* 399 F.3d at 554; *see also* 20 C.F.R. § 404.1523 ("[W]e will consider the combined effect of all of your impairments without regard to whether such impairment, if considered separately, would be of sufficient severity."). The determination of a claimant's RFC is the exclusive responsibility of the ALJ. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), and 416.946.

Significantly, the ALJ need only include in the RFC those limitations which he finds to be credible. *See Burnett,* 220 F.3d at 121, *see also Hartranft v. Apfel,* 181 F.3d 358, 362 (3d Cir. 1999). Thus, to the extent that he found some of Salles's alleged limitations less than credible, the ALJ properly excluded them from the RFC. *See Burns,* 312 F.3d at 129. Salles bears the burden of demonstrating that she lacks sufficient RFC to perform her past relevant work; if she fails to meet this burden, she will be denied benefits. *See* 20 C.F.R. § 416.920(e).

In the case at bar, the ALJ's RFC assessment accounted for Salles's monocular vision (correctable to 20/30 or 20/40 in her right eye) and for the functional effects of her degenerative disc disease, as found by the medical examiners. The ALJ used the specific exertional limitations found by the reviewing physician — who had opined that Salles was capable of medium work — as a point of reference but recognized greater limitations consistent with light work, which gave Salles the benefit of the doubt. Because the ALJ offered specific, factually-supported reasons for his conclusion that Salles's alleged

11

limitations from her back pain, monocular vision, HIV and Hepatitis were less than fully credible, his RFC finding enjoys the support of substantial evidence.

Although Salles complains that the ALJ ignored the limitations imposed by her major depressive disorder and HIV infection, the Commissioner contends — and Salles does not deny — that the record before the ALJ contained no clinical evidence to support her testimony that she had been diagnosed with either of these ailments, let alone that these ailments resulted in functional limitations. The record before the ALJ is the touchstone for determining which limitations should be included in an RFC assessment. *See Burns,* 312 F.3d at 131. A lack of evidentiary support in the medical record is a legitimate reason for excluding claimed limitations from the RFC. *See* SSR 96-8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. §§ 404.1529(a); 416.929(a) (same); *Rutherford,* 399 F.3d at 555. Additionally, the ALJ noted that Salles's headaches and Hepatitis either were controlled by medication or that she did not seek treatment for them consistently. These considerations are supported by the record, and supplied ample reason to exclude these other limitations from the RFC. Finally, the ALJ noted that Salles's alleged visual deficiency in her right eye "has been present for decades, and has not previously precluded [her] from" working. This was a valid reason for excluding this limitation from the RFC. *See Jones v. Sullivan,* 954 F.2d 125, 129 (3d Cir. 1991) (finding substantial evidentiary support for an RFC assessment where, "[i]n performing the step 4 analysis, the ALJ placed great weight on the fact that most of Jones's ailments date back many

12

years and yet did not prevent him from maintaining employment as a security guard.").

E.     *The ALJ Gave Salles's Treating Physician's Opinion Proper Weight*

Salles also argues that the ALJ improperly rejected the opinion of Dr. Arthur Miller (her treating physician) in favor of that of Dr. Celia Roque (a consultative physician). This contention is unfounded.

A treating physician's opinion on the nature and severity of an impairment will be given controlling weight only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *See Fargnoli v. Massanari,* 247 F.3d 34, 43 (3d Cir. 2001). If, however, the treating physician's opinion conflicts with other medical evidence, then the ALJ is free to give that opinion less than controlling weight or even reject it, so long as the ALJ clearly explains her reasons and makes a clear record. *See Jones,* 954 F.2d at 129. When a treating source's opinion is not entitled to controlling weight, it is evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors including the opinion's supportability, consistency and specialization. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ need not defer to a treating physician's opinion about the ultimate issue of disability because that determination is an administrative finding reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e).

Dr. Miller opined that Salles's back pain, Hepatitis C, and gall bladder disease were "currently" disabling. However, the ALJ properly noted that Dr. Miller's opinion

13

was not supported by the other medical evidence of record — which showed that Salles never had gall bladder surgery or a liver biopsy — and was contradicted by his own treatment notes, in which he considered her overall prognosis to be "good." In contrast, Dr. Roque recognized that although Salles suffered from these ailments, they did not preclude her from working full-time. Dr. Roque's opinions were more consistent with the medical records, which confirm that Salles was not taking medication for her Hepatitis, and that conservative treatment of her gall bladder disease and back pain alleviated her symptoms. Because the consultative physician's observations were more consistent with the weight of the evidence, the ALJ properly afforded them greater weight than the opinion of the treating physician. *See* 20 C.F.R. § 416.927(d)(4).

F.    *The ALJ's Step-Four Determination That Salles Could Return To Her Former Job Is Supported By Substantial Evidence*

Finally, Salles insists that the ALJ erred in finding that she could return to her prior work as a telemarketing manager. Because Salles bears the ultimate burden of establishing steps One through Four, she must show that she *cannot* return to her prior job. *See Ramirez,* 372 F.3d at 550. Where, as here, substantial evidence supports the ALJ's RFC determination, a claimant challenging her Step-Four determination must demonstrate that her RFC is inconsistent with the demands of her prior work. *See Newell,* 347 F.3d at 546.

The ALJ concluded that Salles could resume work as a telemarketing manager. Salles claims the ALJ erred in this regard because he ignored her testimony that problems

14

with her right eye required her to leave that job and he failed to consider whether the limitations imposed by her diarrhea and back pain are inconsistent with the demands of this job. This argument fails because it depends upon Salles's assignments of error to the ALJ's assessment of her credibility and RFC, arguments which we have rejected.[5] As explained above, however, the ALJ made proper credibility findings which explained why he rejected some of Salles's claimed limitations and symptoms. The ALJ rejected Salles's contention that visual problems with her right eye precluded her return to the workforce, and all of the available medical evidence — which shows that Salles's vision in her good eye is at least correctable to 20/40 — supports this conclusion. The ALJ also ensured that all of the limitations and symptoms which were credibly established by the record as a whole were expressed in his RFC determination. That being so, Salles's claim that the ALJ erred in his ultimate finding that she had not met her burden of proof at Step Four must be rejected.

V.

_____

[5]     For example, Salles's primary criticism of the ALJ's Step-Four finding that she could return to her former job is that this finding did not follow a function-by-function analysis of her limitations. Although this Court has held that the ALJ need not "use particular language or adhere to a particular format in conducting his analysis," *see Jones v. Barnhart,* 364 F.3d 501, 505 (3d Cir. 2004), it is true that the Agency has stated that "the [RFC] is a function-by-function assessment based on all of the relevant evidence of an individual's ability to do work-related activities." *See* SSR 96-8p. Under the SSRs, then, any error in an ALJ's omission to perform a "function by function" analysis would occur, if at all, in his RFC assessment. As previously explained, we find the ALJ's RFC assessment in this case to be supported by substantial evidence.

15

For all of the foregoing reasons, the Court finds that the decision of the Commissioner is supported by substantial evidence and free from material error. Accordingly, the order of the District Court will be affirmed.